Good morning, Your Honors, and may it please the Court, Joel Lieberson on behalf of Appellant pursuant to this Court's pro bono program. If I may, I'd like to reserve a couple of minutes for rebuttal. Thank you. This case concerns the procedural integrity of the Social Security Disability Benefits process. This is a process which has a host of procedural requirements set forth throughout regulations and case law, in large part because this type of proceeding is unlike the typical proceeding in that the administrative law judge does not function, as this Court has said, as an umpire. It does not function as a trial judge. Rather, the ALJ, in these types of cases, has an independent obligation to ensure that the record is adequately developed prior to rendering a determination. That is particularly important when, as here, the claimant was not represented by counsel at the disability proceeding or at the hearing. In this case, there are two problems that require a remand back to the administrative law judge to ensure that he does indeed adequately develop the record. Those issues concern the medical reports from Drs. Lengel and Kerwin and the Court's credibility determination. Both findings were made adverse to Mr. Jeter and resulted in the ultimate denial of benefits. With regard to the medical records, we have two doctors treating physicians, which are at the apex of the types of doctors that we have here that the ALJ must consider. Both of these individuals indicated that during the relevant time period or before the insured status expired, which would have been March 31, 1997, Mr. Jeter had a permanent disability. Dr. Lengel filled out a vocational health form submitted on the stationery or the letterhead of a government agency and filled it out accordingly. He also filled out a form from the United States Department of Education, as well as a form from the Department of Motor Vehicles. All of these forms were signed under penalty of perjury, indicating that indeed Mr. Jeter had a permanent disability prior to March 31, 1997. His colleague, Dr. Kerwin, also submitted a report under penalty of perjury on another form, a government form from the State of California Health and Welfare Agency, documenting that indeed Mr. Jeter had a permanent disability again prior to March 31, 1997, which is the relevant ---- When was that doctor seeing him? I'm sorry, Your Honor? When was that doctor seeing him? Those doctors, Lengel and Kerwin, I believe, were practitioners working together. And they saw him in 1998, which in ---- They saw him after the ---- after the expiration of the insurance. Yes, they did. And they were looking backwards and giving an opinion that they think he was permanently disabled before the insurance date lapsed. That is correct, Your Honor. And I think that's perfectly appropriate for doctors to do. I mean, we've all been to doctors where we've had a potential illness or something we've needed diagnosed. And doctors will take a look at your situation. They'll look at your history. They'll conduct tests. And they will, if necessary, try to determine what the outset date was. That's permissible for them, I think, to do that. But why would that be more weighty than what some of the doctors who saw him contemporaneously said if the ALJ wants to rely on that? In other words, this is an administrative agency, and I realize there's an independent obligation, but it still comes down to a substantial evidence test. Well, the only evidence that would have supported the disability, quite frankly, which is the problems with the heart and the problems with arthritis, were indeed these two doctors. And Mr. Jeter is quite candid about that in a document he filed with the Appeals Council after the ALJ's finding. So insofar as we're dealing with the disability from the perspective of Mr. Jeter proffering evidence from doctors, it would have been these two physicians. The other physicians, quite frankly, the diagnoses or the issues for which they were treating him did not rise to the level of an illness that would have qualified or been deemed, medically speaking, as a permanent disability. And so what the ALJ needed to do when the ALJ was confronted with independent evidence from two physicians, the two physicians who indeed did say he was permanently disabled, and, quite frankly, are treating physicians. If the ALJ had any doubts whatsoever, again, keeping in mind that treating physicians are at the apex of what we look at when the ALJ is deciding somebody's medical condition, all the ALJ had to do was subpoena these doctors, subpoena further records if necessary, or send them a few follow-up questions. And this Court's case law has made that abundantly clear. So it would have been very easy if there was any doubt whatsoever, Your Honor, that the ALJ should pay attention to Drs. Kerwin and Lengel. He had the ability very easily to go ahead and satisfy himself. He has to. Well, what additional information would you expect to be able to obtain? Well, to be candid with you, that's a little difficult for me to answer. I haven't seen them. But I think, quite frankly, what he could have, the ALJ could have gotten quite easily. If the ALJ was concerned, as he said, that Drs. Kerwin and Lengel basically, you know, checked some boxes on these government forms and made a conclusion of permanent disability with, by the way, an on-sent date prior to March 31, 1997, the ALJ could have said, okay, do you have additional records that substantiate this? In other words, I understand you're submitting this form, but do you have anything else that goes with it? And I think this also points out part of the problem with this process. These are doctors. They get a form from government, you know, that indicates it's from various government agencies. They fill the form out. There's nothing else on the form which says, by the way, if you check a box that says disability, we want a five-page essay or attach, you know, 25 pages of additional medical records. There's nothing on the forms that say that. These are doctors. They're not judges. They're not lawyers. They don't necessarily know what the legal standard is, and they shouldn't be charged as such. They fill out a form as completely as the form asks. And they both did under penalty of perjury. There's no reason whatsoever to think these doctors were being anything other than straightforward. What bothers me is all the other doctors who the appellant saw who had records of what he said and what his problems were as he related to them over a pretty substantial period of time, and it does not include, you know, the complaints that purportedly render him totally disabled. And so why isn't it substantial evidence for the ALJ to rely on those doctors? And why does he have to? I know he's got an obligation to develop the record, like if there was no medical testimony. But when he's got a record filled with all this other medical testimony and other evidence, why isn't it within the realm of normal administrative law to say, well, maybe he could have decided it either way, but he decided it adversely, and there's substantial evidence. Again, I think if you go through those medical reports and some details I have, they generally involve complaints of all sorts of medical conditions, hemorrhoids, some other health-related problems, none of which, quite frankly, have given rise to ---- They couldn't, they wouldn't be, they're not sufficient to show ----  Right. That this gentleman can do absolutely no work whatsoever in the national economy. It's a very stringent test for disability. Yes. If someone says, I'm going to stop working and have the government give me benefits the rest of my life, right? Or at least as long as my current status stays the same. They're not supposed to be able to do any gainful employment. I'm ---- Sorry, go ahead. Well, I'm just saying, it seems that some of these other doctors' views are relevant to whether he could do gainful employment. So where does the independent obligation override that, or why does it override that? I think it's because ultimately, at the end of the day, none of those other doctors were asked to, quite frankly, make a determination as to whether or not there was a permanent disability. None of them were asked the question, from my review of the records and understanding of the records, whether or not the hypertension problems and the arthritis problems could indeed have rendered the disabilities that Drs. Langwell and Kirwan found. And so in the face of that evidence, again, if the ALJ was going to consider those records, the records of the other doctors besides Kirwan and Langwell, at a minimum, in the face of independent evidence from two physicians who under penalty of perjury said, look, I've been asked this question now. I've been asked the question of disability. I don't know what the prior doctors have been asked, but this is what I am now being asked to determine. In the face of those determinations from two independent doctors, the ALJ could not simply disregard them, as he did, and rely on other medical evidence in the record when that evidence didn't address the ultimate question here, Your Honor. How about the other issue? Are you going to touch on the credibility determination? I'd love to, although I see my time is almost up and I wanted to reserve. Would you like me to address it for a moment now, or how do you want me to proceed? You have a minute in rebuttal anyway. Please go ahead and respond to the question. Okay, sir. With regard to the credibility finding, and I would like to direct this Court's attention to Supplemental Excerpt of Record 25. It's finding number 5. What the ALJ says is that the claimant's statements on his impairments and their impact on the ability to work are not credible. So what he – the finding of credibility is linked solely to the ability to work. There is only one piece of evidence in the ALJ's decision, and now I would like to cite the Court to page 24, which talks about the – or excuse me, it's page 23, which talks about the fact that, quote, patient is a sculptor, complains of right wrist pain, he is right-handed, and uses a large hammer and chisel on stone for many years. I think it is very clear, at a minimum, to say if that's the only evidence to support this specific finding, and indeed, it is to support that one finding on credibility, which is the only finding on credibility, that is at best ambiguous. Why isn't that adequate? Because it's ambiguous, and that's the problem. Case law is very clear, Your Honor, that indeed, if there is ambiguous evidence, specifically with regards to credibility, when you need to have specific convincing and objective reasons for rejecting a claimant's credibility or his statements, then you have to go back and evaluate the record. The ALJ cannot take ambiguous testimony, which is clearly what this is. There is no way in the world to know how often he did it, how many years. It's a vague statement. That is not sufficient in order to make an adverse credibility determination, which formed the basis of a denial of benefits. And if I may, I'd like to reserve my one minute, Your Honor, for rebuttal. Thank you. May it please the Court, Lisa Wolf for the Social Security Administration. This is a Title II case with a date last insured of March 1997. That is, Mr. Jeter had to prove he was disabled prior to the date last insured. In this case, the ALJ fully and fairly developed the record. He held a full fair hearing. He properly evaluated the medical evidence and determined Mr. Jeter's credibility. Well, what about the appellant's argument that he's faced with opinions of two treating physicians who did something after the lapse of the insurance, but they looked backward and said he was disabled beforehand. And then he's got some, maybe that's contradicted by earlier treating physicians, but they weren't asked the ultimate disability question. So now appellant argues, well, there was an independent obligation to do more, get these doctors in there or have them provide more information. The appellant must show actual prejudice, and he must point to what medical piece of medical evidence. He can't make inferential leaps, as there might be a piece of evidence. That was not done here. These two physicians, Dr. Kerwin and Lingle, if I'm pronouncing that correctly, he did not consult with these co-practitioners until, like, April 1998. That's almost a year over, actually over a year past his date last insured. These two doctors, their co-practitioners, their disability opinions merely consisted of checkbox forms. One was for the California Department of Motor Vehicles, looked like it was for a handicapped sticker, and the other one was to look like it was to waive student loans. They were not, the ALJ looked at what the contemporaneous medical doctors prior to the date last insured. They are the ones who treated Mr. Jader and did not fill out checkbox forms concerning disability. These forms, maybe perhaps Mr. Jader's physicians were being supportive of him and, you know, to get his student loans waived. There's no chart notes attached showing disability. In fact, there's nothing ambiguous about the evidence. There's a chart note at 165 in the supplemental record, thinks he needs SSI, tests look okay to me. I'm paraphrasing, that's not a quote. That's not ambiguous. They may have filled out forms supporting their patient and waiving their student loans, but with the objective analysis, they considered that the tests look okay. Well, that's something that should be asked to explain, the apparent contradiction between the note and the form that was subsequently filled out. Well, we often see physicians who are supportive of their clients filling out checkbox forms for other government entities, but when the chart notes are reviewed, tests look okay. That's not an ambiguous statement when his client wants SSI. And we have a different disability standard than the California Department of Motor Vehicles and the Student Loan Department of Education. But the ALJ is tasked with reviewing what he has before him and the objective medical evidence. And this evidence is more than one. Mr. Dader did not begin treating with these physicians until a year after Dateless insured. He had no longitudinal treatment history with them. They were merely being supportive for their client, for their patient. Is it fair to say, were they not given, like, the definition of disability under the Social Security laws? In other words, if they checked off a box that said disabled, what can we tell about what they meant by that? There's absolutely no evidence in the record that they — I imagine the doctors would be quite surprised that we're discussing their checkbox forms. I bet they don't even know that their form was submitted to our agency in support of his disability. There is no evidence in the record. That is correct. So what's the scope of this independent obligation, then, in our case law or the Supreme Court's case law? Well, we have — Where do you draw the line as to what the ALJ is required to do to help the applicant? Well, if plaintiff were to obtain a contrary medical evidence or a supportive piece of medical evidence every time he submitted medical evidence, the ALJs would be constantly recontacting.  It's important to remember that plaintiff carries the burden of proving disability, but the ALJ also has a duty to make sure — ensure that the record is developed. Here, there's been no showing — I'll return to my original statement — no showing of actual prejudice. There's — what piece of medical evidence exists out there that would assist us? What piece of — is the medical evidence ambiguous? The chart notes indicate that his physicians, for purposes of SSI, didn't think he was disabled. In terms of the analysis the ALJ did, is that he — did he say there were — there were some disabilities and they were significant, but they didn't stop him from doing his former work? He acknowledged that Mr. Jader had impairments, and he gave him the benefit of doubt when reviewing the medical evidence and assessed Mr. Jader with a capacity for medium exertional work. He noted that Mr. Jader was sculpting and was well-muscled, was quite — and after the date last insured, he reported being quite active in August of 1997. So the ALJ is tasked with reviewing the entire record and determining Mr. Jader's functional capacity, and he did so here. The bill says the only evidence supporting the negative credibility determination rests on evidence that he sculpted with a heavy chisel and hammer, and that the record is insufficient on that to support the inference that the ALJ drew. How do you answer that? Well, in fact, there are four reasons that the ALJ cited when determining Mr. Jader's credibility. He noted, that is correct, that Mr. Jader was performing — he was not forthcoming in the amount of work he was performing. He was quite active. The transcript is littered. It's quite replete with references to his sculpting and performing work, and that's at 22 and 23 in the SER. He also noted that considering the disabling arthritis pain, he was carving and sculpting, so he found that was inconsistent with a person alleging disability. He also noted that Mr. Jader's upper extremity pain had resolved with treatment, and that's appropriate factor for the ALJ to consider. And fourth, he noted that a treadmill test had been essentially normal, showing relatively good functional capacity. So the ALJ — however, the ALJ credited some of Mr. Jader's assertions concerning his limitations, and he noted in his decision that he was giving Mr. Jader the benefit of the doubt and assessing him with a medium residual functional capacity. The ALJ apparently discredited two of the treating doctors because their opinions were conclusory and also conflicted with earlier treating doctors. Is that true? That's correct. Is it your position that under those circumstances, where the ALJ thinks that some of the treating doctor's statements are conclusory, that he has no duty to determine the basis for the conclusions? Well, he reviewed Dr. Kerwin and Dr. Lengel's statements or checkbox forms, and there might be some instances where the evidence could be ambiguous. If there was more than — well, if it was prior to the date less ensured, that might be a significant factor in this case, but it's not. I could envision some circumstances where there could be conclusory statements if there weren't any chart notes. But here we have the chart note that — it's a little chart. It's in the middle of page 165 where he had jotted down — it looks like he had noted that his patient thought he needed SSI, but the test looks okay to him. So the forms filled out for the Department of Motor Vehicles and the Department of Education in this case are the only opinion evidence of disability. There are no — not one of his treating physicians prior to the date last insured indicated that he ever — that he was disabled, that he met a listing, that he was severely limited. In fact, in the chart notes prior to the date last insured,  he was quite active. He was noted to be well-muscled. These are things that the ALJ is appropriate for him to consider when evaluating the record. So in this case, substantial evidence supported the ALJ's finding. There was a full and fair hearing. There was no duty to or need to recontact. Do we have any opinions on this independent duty that would say, like, if an ALJ has a claim by an applicant but no medical evidence at all, the ALJ's got to go out and get some? Or conversely, if he's sitting there with five or six medical records and opinions, that that's enough and he then doesn't have to independently get more? Well, there's a recent case, Salaya. In this case, it's unlike Salaya, Your Honor, in that — in that case, all the impairments — there was an impairment that was not discussed. That was — in Salaya, it was a pro se plaintiff who was illiterate and whose obesity levels — her body mass index was close to meeting the listing level for obesity. This is not a case — and I'm out of time, but the — all the impairments in this case have been discussed. There's been no showing of actual prejudice. There's been no showing what piece of medical evidence exists out there that could resolve our dilemma. So this case is unlike Salaya. There's no — there's been no allegation that Mr. Jader comes near to meeting a listing. Is that what Your Honor was referencing, this lay? Well, I was just trying to hear if there was — what opinions you thought were out there to bear on this. And that's all I have. If there's no further questions. Thank you. Thank you. Your Honor, I'll be brief. There's just a couple of points I want to make, and then I need to clarify a couple things in the record that can't go. It is imperative to understand here that Drs. Kerwin and Lengel are the treating physicians, the most important doctors in the Social Security disability inquiry. They were the only doctors asked the ultimate question that is at issue in this proceeding. Under these circumstances, for the ALJ to ignore or fail to develop the record with regard to the two key pieces of medical evidence simply is inconsistent with the obligation to develop the record. They want to ask the question like in a deposition or something where they're giving testimonies disabled. They checked off these forms that were designed for other purposes, right? Well, yes and no, in fact. The purpose is a motor vehicle form. Well, that's not just it, and that's part of what I want to clean up in the record. It is indeed true that Dr. Lengel submitted a form for the DMV and for the Department of Education. Both forms, by the way, indicating permanent disability, but for different purposes. However, that is not the only thing Dr. Lengel submitted under penalty of perjury saying there was a permanent disability. He also filled out a vocational health statement from a government agency. Dr. Kerwin had nothing to do with the DMV or the Education Department. On a separate, independent form from the State of California Health Department agency, a disability agency, he indicated that there was a permanent disability. This is directly related to the health status and the disability status of claimant. That's what the form was designed to do. This was not a form. It indicates there's a permanent disability. That's correct. Is there anything with that form that defines what permanent disability means? On the face of the form? If a person can have a permanent disability, they have some disability that's going to never leave them, but it doesn't mean they can do no gainful work in the U.S. economy. So what are those forms, what do they prove? Well, they did a couple of other things. They also asked whether or not to reduce... What about that last question, the form you just mentioned? Yes. But for the California Welfare... Got it in front of me right now. Did it define disability in a way that would be congruent with the Federal disability that entitles you to Social Security, which is a very strict standard? No, I understand what you're saying, Your Honor. The face of the form does not, but let me say... But if the face of the form doesn't, then what does that form mean? Why should we give it, why should we say it raises an issue that invokes this independent duty? Because it does ask questions, as does the form that the other physician filled out, that are relevant. It asks the question, does the patient, and I'm now at SCR 142 for the record, does the patient have a physical or mental incapacity that prevents or substantially reduces his or her ability to engage in work training and provide other unnecessary care? The answer is yes. Clearly, the doctor is being asked not just to, you know, is the person disabled, but how does it impair the ability to work? What were those words you were writing, affects or reduces ability? It doesn't really track the Federal standard that we have to deal with on this side. I'm aware of that, and that is exactly why when faced with this type of evidence, evidence that indicates a disability in both forms, where both doctors indicate an inability to work, that is exactly why the ALJ, with an independent duty to investigate and develop the record, should have asked some of the very questions Your Honor is asking. One of the best precedents, just you don't have to go into detail, just their names and the very best precedents do you think support that this independent duty goes to? Sure. Tenapton, if I'm pronouncing that right. Smolin. Basilia case that I just submitted under Rule 20HA. I think those are three of the best cases that support that independent duty. And two other things very briefly, if I can. There's a comment that the government made with regard to a reference, thinks needs disability SSI for her. At no time whatsoever did the doctor who made that comment indicate he was not disabled for purposes of the Social Security disability proceedings. And furthermore, at best, at the very best, that comment is ambiguous and cannot, pursuant to the independent duty to investigate, form the basis to make an adverse determination. Lastly, with regard to credibility. Indeed, I would refer the Court again back to SCR 24, excuse me, back to SCR 25, because this is critical. Point number five says the only finding, and that's what the Court has to look at here, the only finding the ALJ made on credibility had to do with the questions regarding Jeter's ability to work. That is it. That is the linchpin on credibility. And the only evidence to support that finding is this notion about a chisel for years. It is unclear how much work was done and for how many years. And to suggest that that ambiguous evidence can support that finding under the relevant standard is simply legal error. And on that, I would submit, unless there are any further questions, Your Honors. We thank you for your argument, and in particular, you and your firm for your participation in the Pro Bono program. We appreciate it and hope the experience has been worthwhile. Thank Ms. Wolf for her argument, and this case is submitted. Thank you, Your Honor.
judges: Alarcon, Gould, Clifton